Lundberg Stratton, J.,
concurring.
{¶ 5} I concur in the majority’s decision to answer the certified question by concluding that currently there is no state postconviction or other avenue to litigate the issue of whether Ohio’s lethal injection protocol is constitutional under Baze v. Rees (2008), 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law.
{¶ 6} The dissent of Chief Justice Brown contends that this court has abdicated its responsibility to the federal courts to hear and settle this matter, thereby shirking its duties to enforce and interpret Ohio law. The dissent begins from the faulty starting point that the central issue in this case is whether we will ensure that the delivery of death does not needlessly inflict severe pain. However, the true issue in this case is whether this court is required, via judicial fiat, to set up yet another layer of appeals when the legislature has not. For the reasons that follow, I concur with the majority’s decision today that Ohio has no such postconviction or other forum to litigate the issue of whether Ohio’s lethal injection protocol is constitutional under Baze or under Ohio law, that the federal courts are well equipped to handle such challenges, and that this court need not create an appellate procedure where one does not exist.
{¶ 7} The dissent seems to begin with the assumption that all methods of executions are suspect. As noted in Baze v. Rees, “[r]easonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable.” Baze, 553 U.S. at 61, 128 S.Ct. 1520, 170 L.Ed.2d 420. This philosophical debate, however, is misplaced in this case. Our duty is to uphold the law, not to opine on whether there could be a more humane manner of administering the penalty of death in Ohio.
{¶ 8} Capital punishment is constitutional. Gregg v. Georgia (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. Therefore, “[i]t necessarily follows that there *320 must be a means of carrying it out. Some risk of pain is inherent in any method of execution — no matter how humane — if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions.” Baze, 553 U.S. at 47, 128 S.Ct. 1520, 170 L.Ed.2d 420.
Eighth Amendment
{¶ 9} Our decision today is guided by the Eighth Amendment to the Constitution, which provides that “[ejxcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” Further guidance is found in R.C. 2949.22(A), Ohio’s lethal injection statute, which provides that “a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death.”
{¶ 10} Throughout the history of this country, the United States Supreme Court has time and again upheld various methods of carrying out a sentence of death. “For much of American history, capital punishment was carried out by public hanging.” Elliot Garvey, A Needle in the Haystack: Finding a Solution to Ohio’s Lethal Injection Problems (2010), 38 Cap.U.L.Rev. 609, 622. In 1878, the court upheld the use of a firing squad in carrying out executions in Wilkerson v. Utah (1878), 99 U.S. 130, 134-135, 25 L.Ed. 345. In 1890, the court upheld the use of the newly created electric chair in In re Kemmler (1890), 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519. Today, at least 36 states, along with the federal government, have now adopted lethal injection as the exclusive or primary means of implementing the death penalty. Baze, 553 U.S. at 42-43, 128 S.Ct. 1520, 170 L.Ed.2d 420.
{¶ 11} The dissent seems to advocate a 100 percent guarantee of a painless death. But the Baze court, in upholding Kentucky’s lethal injection protocol, held that “[sjimply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of ‘objectively intolerable risk of harm’ that qualifies as cruel and unusual.” Id. at 50. Baze held that “[pjermitting an Eighth Amendment violation to be established on [a showing that better alternatives exist] would threaten to transform courts into boards of inquiry charged with determining ‘best practices’ for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures — a role that by all accounts the States have fulfilled with an earnest desire to provide for a progressively more humane manner of death.” Id. at 51.
*321 R.C. 2949.22
{¶ 12} The dissent argues that although the Eighth Amendment may not bar Ohio’s new execution protocol, R.C. 2949.22(A) provides greater protection against pain and suffering than does the Eighth Amendment prohibition against cruel and unusual punishment. As noted in our order, there are already several established methods for an Ohio capital defendant to receive state review of his or her case. These methods, created by the Constitution or the legislature, are clear in their application to capital defendants. Section 2(B)(2)(c), Article IV of the Ohio Constitution authorizes a direct appeal to this court of all death-penalty cases. R.C. 2953.21 creates postconviction-relief procedures for persons convicted of crimes, including those who have been sentenced to death. R.C. 2725.01 prescribes procedures for state habeas corpus petitions that apply to capital defendants. Finally, capital defendants may file an application for reopening their appeals in the court of appeals and in this court under App.R. 26(B). Apart from state review, federal review includes federal habeas corpus under Section 2254, Title 28, U.S.Code, as well as an action under Section 1983, Title 42, U.S.Code, for injunctive relief.
{¶ 13} This court is correct to refrain from creating another appellate process when the General Assembly has not so provided.
Declaratory Judgment and Mandamus
{¶ 14} The dissent highlights what it believes to be two avenues by which a death-row petitioner may challenge the method of execution in Ohio courts: declaratory-judgment actions and mandamus. In my view, neither of these methods is necessary, as the federal courts have done a thorough job thus far of adjudicating this issue. Further, a writ of mandamus to ensure that the warden fulfills his duty to carry out the death penalty quickly and painlessly under R.C. 2949.22 would simply order the warden to do that which he or she is already required to do by law and that which he or she is already doing.
Conclusion
{¶ 15} The Ohio General Assembly did not choose to create an Ohio cause of action specifically to litigate the issue of whether Ohio’s lethal injection protocol is constitutional under Baze or under Ohio law. I support this court’s decision not to create a cause of action that does not exist, but rather to leave that policy decision up to the General Assembly.
{¶ 16} With the existing system of direct appeals, postconviction relief, state habeas corpus, applications for reopening, federal habeas corpus, and Section 1983 actions, along with the various levels of appeals attendant to each action, there are more than adequate protections for those given the ultimate sentence. At some point, the victims’ families and the state deserve finality in judgment. *322 For those reasons, I concur in the majority’s decision to answer the certified question in the negative.
Lanzinger, J., concurs in the foregoing opinion.